******************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# ROBERT CLASBY ET AL. *v.* EDWARD ZIMMERMAN ET AL.
## (AC 41463)

Lavine, Prescott and Elgo, Js.

*Syllabus*

The defendant general contractor, B Co., appealed to this court from the judgment of the trial court denying its application to confirm an arbitration award made in connection with a prior action the plaintiff homeowners had brought against B Co. and its owners, the defendants E and L. The plaintiffs had hired B Co. to raise and remodel their home, and, after becoming dissatisfied with B Co.'s work, they commenced the underlying action seeking damages for, inter alia, breach of contract. Prior to trial, the parties, in an effort to settle their issues and allow B Co. to complete the project, signed a stipulation that included an agreement to resolve their disputes through arbitration, and the plaintiffs thereafter withdrew their action. The arbitration agreement provided, inter alia, that the parties would submit their issues regarding the renovations to an arbitration panel, which was given broad oversight authority to determine what work remained to be done on those issues and the price to be paid for that work, and that the plaintiffs agreed to pay the amount determined by the panel to be due for the completion of the project. In February, 2017, the panel issued an award, which expressly stated that it was final as to those costs that had been proven but that it was interim as to those costs yet to be proven to complete the project. The award further specified that the cost to complete certain cabinetry work was $76,500, of which $24,643.50 had been paid to date by the plaintiffs, and noted the remaining balance due for the cabinetry. Neither party filed a motion to vacate, modify or correct the February, 2017 award. Thereafter, in light of an ongoing dispute between the parties concerning B Co.'s claim that, pursuant to the February, 2017 award, it was entitled to be paid the entire $76,500 for the cabinetry work, the panel issued a second award in August, 2017. In the August, 2017 award, the panel found that the parties had agreed to a design change that had reduced the cost of the cabinetry by approximately $20,000 and clarified that, contrary to B Co.'s claim, because the cabinetry work had not been completed when the panel issued the February, 2017 award, the $76,500 cost it attributed to the cabinetry had not been a final determination, as the actual cost to complete the cabinetry had been unknown and unproven at the time. Neither party filed a motion to vacate, modify or correct the August, 2017 award. Subsequently, B Co. filed an application to confirm the February, 2017 award. B Co. also sought an order vacating the August, 2017 award, and an order that the plaintiffs pay B Co. the entire $76,500 cost of the cabinetry work as set forth in the February, 2017 award, rather than the reduced amount reflecting the actual cost of the cabinetry work as set forth in the August, 2017 award. The trial court denied B Co.'s application to confirm the award, and B Co. filed an amended appeal with this court. *Held*:

1. The trial court improperly denied B Co.'s application to confirm the February, 2017 award; where, as here, B Co. filed a timely application to confirm the February, 2017 award within one year after it was rendered, and the parties failed to timely file any motion to vacate, modify or correct that award as required by the thirty day statutory (§ 52-420) limitation period, the court was required, pursuant to statute (§ 52-417), to confirm the award unless it was vacated, modified or corrected.

2. The trial court correctly denied B Co.'s request that it vacate the August, 2017 award and hold the plaintiffs responsible for the cost of the cabinetry work as set forth in the February, 2017 award: because B Co. failed to timely file an application to vacate, modify or correct the August, 2017 award, which reduced the cost of the cabinetry work by more than $20,000 and clarified that the $76,500 for the cabinetry work in the February, 2017 award had been an interim placeholder pending the determination of the actual cost, B Co. thereby consented to its terms, the trial court lacked any authority to invalidate the award, which

was binding on the parties and not subject to judicial scrutiny, and the court was required to defer to the arbitration panel's clarification; moreover, the February, 2017 award expressly provided, with respect to the cost of the uncompleted cabinetry work, that it was an interim determination on the basis of the evidence available to that date, such that it was reasonable to conclude that the $76,500 cost was not intended to reflect a final and binding determination, and the parties were on notice that the cost was subject to modification by the arbitration panel, which had been granted broad authority by the parties in their submission.

Argued February 4—officially released July 9, 2019

*Procedural History*

Action to recover damages for, inter alia, breach of contract, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk, where the defendants filed a counterclaim; thereafter, the plaintiffs withdrew the action in accordance with the parties' stipulation to enter into binding arbitration and the defendants withdrew their counterclaim; subsequently, the arbitrators issued certain awards and entered certain orders; thereafter, the court, *Genuario, J.*, denied the application to confirm the arbitration award filed by the defendant Bradford Estates, LLC, and rendered judgment thereon, from which the defendant Bradford Estates, LLC, appealed to this court; subsequently, the court denied the motion for reconsideration filed by the defendant Bradford Estates, LLC, and the defendant Bradford Estates, LLC, filed an amended appeal with this court. *Reversed in part*; *judgment directed*.

*Lawrence F. Reilly*, with whom was *James A. Alissi*, for the appellant (defendant Bradford Estates, LLC).

*Thomas B. Noonan*, for the appellees (plaintiffs).

*Opinion*

PRESCOTT, J. The defendant, Bradford Estates, LLC,[1] is a general contracting business hired by the plaintiffs, Robert Clasby and Krista Clasby, to raise and remodel their shoreline home, which was extensively damaged by Hurricane Sandy. The parties agreed to arbitrate disputes that arose during the construction project, and the defendant now appeals from the judgment of the trial court denying its application to confirm a February 4, 2017 arbitration award.[2] The defendant contends that the February 4, 2017 award conclusively established that the defendant was entitled to collect from the plaintiffs a balance of $51,856.65 in materials and labor for certain cabinetry work.

The defendant's claim on appeal is essentially two-fold. First, he claims that, because no timely application to vacate, modify or correct the February 4, 2017 award was ever filed, the court was obligated to grant the defendant's application to confirm the award. Second, the defendant claims that, by denying its application to confirm the February 4, 2017 award, the court effectively and improperly gave legal effect to a subsequent award issued by the arbitration panel on August 23, 2017, in which the arbitration panel clarified that the February 4, 2017 award was not a final determination with respect to the cost of the cabinetry work and reduced the amount that the defendant was entitled to collect for the cabinetry work by more than $20,000.

We agree with the defendant that the trial court "had no choice" but to grant the defendant's timely application to confirm the award because neither party filed a timely application to vacate, modify or correct the February 4, 2017 arbitration award. See *Rosenthal Law Firm, LLC* v. *Cohen*, 165 Conn. App. 467, 472, 139 A.3d 774, cert. denied, 322 Conn. 904, 138 A.3d 933 (2016). Nevertheless, we do not agree with the remaining aspect of the defendant's claim that confirmation of the February 4, 2017 award necessarily invalidates or renders legally inoperative the arbitration panel's August 23, 2007 award, particularly with respect to its modification of the balance owed to the defendant for the cabinetry work. In other words, we conclude that the trial court properly denied the defendant's request for an order directing the plaintiffs to pay the defendant an additional $21,463 for cabinetry work.[3] For the reasons that follow, we affirm in part and reverse in part the judgment of the trial court, and remand the matter with direction to grant the application to confirm the February 4, 2017 award, but to deny the remainder of the relief requested in the application.

The record reveals the following facts, as found by the arbitration panel or as undisputed in the record.[4] The plaintiffs hired the defendant to renovate and remodel their shoreline home in Darien, which had suf-

fered significant damage from Hurricane Sandy. The project included raising the home above the existing foundation and redesigning and strengthening the foundation to comply with new regulations. The relationship between the parties, however, soon deteriorated.[5] The plaintiffs became dissatisfied with many aspects of the project, including the cost, quality, and progress of the renovations. The defendant eventually withdrew from the project after it was halfway completed.

The plaintiffs commenced a civil action against the defendant in January, 2014. In their operative complaint, the plaintiffs alleged causes of action sounding in breach of contract, a violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq., fraud, conversion, breach of the covenant of good faith and fair dealing, and negligence. The plaintiffs also sought to pierce the corporate veil between the defendant and the Zimmermans. The defendants filed an answer, special defenses, and a counterclaim alleging defamation per se.

After several years of litigation, on April 29, 2016, the parties signed a stipulation that included an agreement to resolve their disputes through private arbitration in lieu of a trial. The plaintiffs withdrew their complaint, and the defendant withdrew its counterclaim. The parties agreed to submit their issues to a three member arbitration panel with the intent that the defendant would return to the project and finish the renovations to the plaintiffs' home under the direction and supervision of an engineer and a building professional, both of whom also would serve as members of the arbitration panel.[6] The stipulation refers to a "Schedule A," which was a chart that listed a variety of existing construction issues, the parties' positions relative to those issues, and any agreed upon resolution already reached by the parties. Pursuant to the stipulation, the plaintiffs agreed to pay "any remaining amounts determined by the [a]rbitrators to be due for the completion of the [p]roject" and to "place in escrow with their counsel an evergreen $100,000 to secure payments to [the defendant] under [the] [s]tipulation . . . ."[7] The parties granted broad oversight authority to the arbitration panel, including the right to determine when the project was completed, at which time the parties agreed to exchange releases from liability.

The parties submitted evidence to the arbitration panel, and the panel conducted several days of hearings. The parties submitted simultaneous posthearing briefs on January 6, 2017. On February 4, 2017, the arbitration panel issued an award with the seemingly contradictory title "Interim Award/Final Award." By way of explanation, the arbitrators expressly provided that the award should be viewed as final "as to allocations of costs of items proven to date," but interim "as to costs to complete." Later in the award, in a section addressing

the costs to complete the project, the arbitrators again discussed, albeit in somewhat different terms, the interim aspects of the award. In particular, they stated that the award was interim "as to the attribution to the parties of costs to complete the project, but is a final award as to each credit and/or cost accounted for" in a spreadsheet appended to the award.[8]

The spreadsheet attached to the award listed a variety of specific items that remained to be completed. Associated with each enumerated item was (1) a "cost," representing a total cost that the arbitrators assigned to complete the item, (2) a "paid to date" amount, reflecting the amount the plaintiffs already had paid toward completion of that item; and (3) a "balance," or the difference between the "cost" and the "paid to date" amount. Item 21 of the spreadsheet pertained to "Cabinetry—labor/material" and listed a cost of $76,500, a paid to date amount of $24,643.50, and a balance of $51,856.65.[9]

Neither party timely filed an application to vacate, modify or correct the February 4, 2017 award.[10] The defendant resumed its work completing the remaining renovations under the terms of the stipulation, including the cabinetry work.

On August 23, 2017, the arbitration panel issued another arbitration award titled "Interim Award (revised)." That award attempted to resolve the parties' ongoing dispute regarding payment for the cabinetry work referenced in item 21 of the spreadsheet appended to the February 4, 2017 award.[11] The August 23, 2017 award provided in relevant part: "Despite numerous discussions between the [supervising members of the arbitration panel] and the [defendant], [the defendant] continues to insist to the [arbitration panel] that its [February 4, 2017 award] requires that it be paid $76,500 for cabinetry work, whether or not this amount is ever proven as the actual cost of the cabinetry. The [defendant's] position is groundless and untenable. While the [arbitration panel] found there was a contract between the parties, which included a 'total price,' because the actual costs were unknown, this price was only a placeholder for whatever the actual construction costs turned out to be." The arbitration panel explained that the spreadsheet containing the $76,500 figure representing the "cost" of cabinetry work was prepared "to show what the [plaintiffs] had already paid, as of the hearing, toward the construction's actual cost. This was the sole purpose of the [spreadsheet]. As to costs yet unknown, the [February 4, 2017 award] was interim, because it was subject to change, as any construction cost might be, for such items and events as change orders, unforeseen and/or hidden costs, and delay." The arbitration panel found that the defendant had agreed to a design change involving a reduction in the amount of cabinetry originally envisioned, noting that "had the parties added

to the project, the [defendant] would have expected to be paid for additional cabinetry.''

The defendant never filed a timely application to vacate, modify or correct the August 23, 2017 award. Rather, on November 22, 2017, the defendant filed an application to confirm the February 4, 2017 award, in which it also asked the court to vacate "any such subsequent order(s) from the arbitration panel which are contrary to the terms of the award originally rendered."[12] The plaintiffs filed an objection to the application to confirm, arguing that the defendant had misinterpreted the February 4, 2017 award and, essentially, was seeking to be paid for work that it never provided.

The trial court, *Genuario, J.*, heard argument on January 22, 2018. It later issued an order on February 23, 2018, denying the application to confirm the February 4, 2017 award. The court's order stated: "The parties entered into an arbitration agreement intended to result in the orderly completion of the plaintiffs' home by the [defendant] under the jurisdiction of an arbitration panel. Indeed, two members of the panel were actually assigned to act as supervisors of the work. The arbitration submission is very broad, including granting the panel the power to 'take any action as may be deemed necessary to effectuate the intent of this stipulation.' The panel issued an Interim/Final award on February 4, 2017, which included a line item for cabinetry [that] the defendant claims by its terms was final and the plaintiff claims was interim. The parties returned to the panel, and, on August 23, 2017, the panel issued an award with regard to the cabinetry [that] reduced the amount after that work had been completed and the panel had been presented with additional evidence. The panel described the [defendant's] claim for the original amount as 'groundless.' The [defendant's] sole meaningful argument is that the time frame for appealing the initial award having passed, neither the parties [n]or the panel had the right to modify the award. But that argument begs the question. The issue is whether or not the February 4, [2017] award was a final or interim award, and the original submission grants the panel the authority to deal with such issues in order to 'effectuate the intent' of the parties. The [defendant], having agreed to grant the panel such broad authority and participated in the process accordingly, cannot now deprive the arbitrators of the very authority granted to them in anticipation of such disagreements. Accordingly, the defendant's [application] to confirm the February 4, 2017 award is denied." This appeal followed.[13]

Before turning to our discussion of the defendant's claim, we remark briefly on the unusual nature of the stipulation entered into by the parties. As noted by the trial court, the parties used very broad language in their stipulation defining the powers of the arbitration panel,

which included expansive authority to resolve, perhaps on a daily basis, any disputes arising from changes in costs and how those changes would affect the amount the plaintiffs owed the defendant for work performed. The broad and sometimes imprecise language used in the submission increases the difficulty of determining the proper legal effect to afford to the arbitration panel's arbitration awards, neither of which is characterized as having completely resolved the parties' disputes. Ordinarily, private arbitrators are utilized by parties as an alternative to litigation with the hope of expedited resolution of then-existing disputes with defined, articulable contours. It would seem to fall outside the usual role of an arbitrator to act not only as an adjudicator but, like in the present case, as a quasi-special master, with extensive powers to oversee and direct completion of a construction project in which factual and legal issues, potentially uncontemplated by the parties in drafting their submission, might later arise. This dual role, in which supervising members of the arbitration panel would make immediate, on-site decisions regarding the construction project and then potentially later would be asked to adjudicate the financial responsibilities with respect to those choices, creates a risk of conflicts of interest that render this type of arbitration agreement problematic. Nevertheless, as a creature of contract, the parties are largely in control of the type of submission by which they agree to be bound. Fortunately, although the unusual nature of the arbitration proceedings in this case challenges our review process, it does not thwart it.

## I

We turn first to the defendant's claim that the court lacked the discretion to deny its application to confirm the arbitration award. The defendant argues that, pursuant to the statutory framework governing arbitrations in Connecticut, once an arbitration award is rendered, and the thirty day period for filing an application to vacate, modify or correct the award lapses, a timely application to confirm the award ordinarily must be granted by the court. We agree.[14]

We begin with general legal principles, including the standard that governs our review of the court's denial of the application to confirm the arbitration award. "Arbitration is favored by courts as a means of settling differences and expediting the resolution of disputes. . . . There is no question that arbitration awards are generally upheld and that we give great deference to an arbitrator's decisions since arbitration is favored as a means of settling disputes. . . . The limited scope of judicial review of awards is clearly the law in Connecticut." (Citations omitted; internal quotation marks omitted.) *Wolf* v. *Gould*, 10 Conn. App. 292, 296, 522 A.2d 1240 (1987). Whether the circumstances presented require a court to grant an application to confirm an

arbitration award as a matter of law presents a legal question over which we exercise plenary review. See *HH East Parcel, LLC* v. *Handy & Harman, Inc.*, 287 Conn. 189, 196, 947 A.2d 916 (2008) (determination of whether trial court engaged in correct level of review was question of law requiring plenary review).

The core principles of Connecticut's arbitration law are set forth in General Statutes §§ 52-408 through 52-424. "Under [General Statutes] § 52-417, a party may apply for the confirmation of an arbitration award within one year after it has been rendered."[15] *Directory Assistants, Inc.* v. *Big Country Vein, L.P.*, 134 Conn. App. 415, 420, 39 A.3d 777 (2012). "[Section] 52-417 provides that in ruling on an application to confirm an arbitration award [t]he court or judge *shall* grant such an order confirming the award unless the award is vacated, modified or corrected as prescribed in [General Statutes §§ ] 52-418[16] and 52-419.[17] . . . The trial court lacks any discretion in confirming the arbitration award unless the award suffers from any of the defects described in . . . §§ 52-418 and 52-419. . . . Furthermore, if [an application] to vacate, modify or correct is not made within the thirty day time limit specified in General Statutes § 52-420 [(b)],[18] the award may not thereafter be attacked on any of the grounds specified in §§ 52-418 and 52-419." (Emphasis added; footnotes added; internal quotation marks omitted.) *Stratek Plastics, Ltd.* v. *Ibar*, 120 Conn. App. 90, 91, 991 A.2d 577 (2010). "[Section] 52-420 (b) does not limit the thirty day filing period to applications arising out of the grounds for vacatur enumerated in § 52-418, but also applies to common-law grounds, such as a claimed violation of public policy. . . . If the motion [to vacate] is not filed within the thirty day time limit, the trial court does not have subject matter jurisdiction over the motion." (Citation omitted; internal quotation marks omitted.) *Rosenthal Law Firm, LLC* v. *Cohen*, supra, 165 Conn. App. 471.

In *Directory Assistants, Inc.* v. *Big Country Vein, L.P.*, supra, 134 Conn. App. 415, the plaintiff filed an application in the Superior Court to confirm an arbitration award. Id., 418. The defendants, who had failed to file a timely application to vacate, modify or correct the award, filed a motion to dismiss the application to confirm, arguing, inter alia, that the parties' dispute had not been arbitrable. Id. The trial court agreed with the defendant and dismissed the application to confirm the award. Id. The plaintiff appealed, and this court reversed the judgment of the trial court. Id., 422. We held that a party that failed to file a timely application to vacate an arbitration award was barred from raising any claims challenging the award in a pleading filed in response to an application to confirm the award. Id. Further, we held that in the absence of a valid application to vacate, modify or correct an award, the court "lacked any discretion in confirming [the award] pursu-

ant to § 52-417." Id.

This court applied the same rationale in *Rosenthal Law Firm, LLC* v. *Cohen*, supra, 165 Conn. App. 467. In that case, the self-represented defendant appealed from the judgment of the trial court granting an application to confirm an arbitration award, arguing that the trial court improperly had concluded that his responsive pleading, in effect, was an untimely motion to vacate the award, and that the court failed to consider the merits of his arguments.[19] Id., 468. The plaintiff argued that the court had been obligated to confirm the award because the defendant had not filed an application to vacate within thirty days of receiving notice of the arbitration award, as required by General Statutes § 52-420 (b), and, thus, the court lacked the authority to consider his arguments against confirmation. Id., 470. We agreed with the plaintiff and affirmed the judgment of the trial court. Id. We held that, because the defendant had not timely moved to vacate, modify or correct the arbitration award, "the defendant had lost the ability to raise any statutory or common-law grounds for vacating the award . . . [and] the trial court *had no choice* but to confirm the award." (Citation omitted; emphasis added.) Id., 472.

In the present case, the defendant filed its application to confirm the February 4, 2017 arbitration award on November 22, 2017, well within the one year period set forth in § 52-417. It is undisputed that neither party filed within the thirty day statutory time period an application with the Superior Court raising any ground to vacate, modify or correct the February 4, 2017 arbitration award. See General Statutes § 52-420 (b). Although the record shows that both parties were not fully satisfied with the arbitration panel's award, as reflected in the plaintiffs' motion for reconsideration and reargument and the defendant's opposition thereto, neither party pursued those issues further. Even if we treated the plaintiffs' objection to the defendant's application to confirm the February 4, 2017 award as an application to vacate, modify or correct the award, it was filed well outside the thirty day statutory time period for challenging the award and, therefore, could not have formed a proper basis for a decision by the trial court to deny confirmation of the award.

In denying the defendant's application to confirm the award, the trial court did not cite to any specific defect as justifying its ruling. Rather, it appears that the court was focused on the defendant's challenge to the arbitration panel's later modification and clarification of the award, which the court indicated was well within the broad authority the parties had granted to the arbitration panel in their submission. In the absence of a timely application to vacate, modify or correct the award, however, the court had no choice but to confirm the February 4, 2017 award. The court's decision to deny the

application was, therefore, in error. This conclusion does not, however, fully resolve the claim on appeal.

## II

The remaining aspect of the defendant's claim is that by denying its application to confirm the February 4, 2017 arbitration award, the court also improperly declined to order the plaintiffs to pay the defendant in accordance with that award and, instead, tacitly validated the arbitration panel's August 23, 2017 award, which, by its terms, modified the amount the plaintiffs owed the defendant for the cabinetry work. The premise underlying this argument is that confirmation of the February 4, 2017 award necessarily required the plaintiffs to pay any amounts listed in that award. We reject that premise for two reasons. First, the defendant failed to challenge the propriety of the August 23, 2017 award in a timely application to vacate, modify or correct the award, and, therefore, that award, which included clarification and modification of the February 4, 2017 award, is binding on the parties and not subject to judicial scrutiny. Second, by its own terms, the February 4, 2017 award was interim in nature with respect to the cost assigned to the cabinetry work, and the defendant has not directed our attention to any language in the parties' submission that limited the arbitration panel's authority to modify that initial cost estimate on the basis of evidence of the actual cost following completion of the cabinetry work. Accordingly, we reject this aspect of the defendant's claim.

By failing to timely challenge the August 23, 2017 award, the defendant consented to its terms. In its August 23, 2017 award, the arbitration panel acknowledged the defendant's claim that the February 4, 2017 award contained a final and binding determination that the defendant was entitled to be paid $76,500 for cabinetry work. The arbitration panel, however, rejected that construction of its February 4, 2017 award, describing the defendant's position as "groundless and untenable." The panel took the opportunity to clarify that, because the cabinetry work had not been completed at the time it rendered the February 4, 2017 award, the actual costs were unknown at that time, and, thus, the $76,500 listed as the "cost" represented only "a placeholder for whatever the actual construction costs turned out to be." The panel maintained that the only figures on the spreadsheet that were final, and thus not subject to later modification, were the figures reflecting the amount the plaintiffs already had paid to date. Those figures were a final determination by the panel of the credit the plaintiffs would be due against the actual cost, which had yet to be finally determined.

In its application for confirmation of the February 4, 2017 award, the defendant argued that the court should declare the August 23, 2017 award "illegal, null, and void " because, according to the defendant, the panel

lacked any authority to modify the February 4, 2017 award with respect to the cabinetry work. The defendant's arguments challenging the propriety of the August 23, 2017 award, however, could have been raised in a timely application to vacate the award. Because the defendant failed to do so, the trial court lacked any authority to invalidate the award. Instead, the court was required to give deferential treatment to the arbitration panel's own articulation and clarification of the February 4, 2017 award. See *All Seasons Services, Inc.* v. *Guildner*, 94 Conn. App. 1, 11, 891 A.2d 97 (2006) (holding that court improperly disregarded arbitrator's articulation of award and that "arbitrator's judgment that a clarification was warranted is to be given deference by the court").

Finally, even without the benefit of the panel's August 23, 2017 clarification, the February 4, 2017 award, although not a model of clarity, conveys by its terms that the "costs" set forth for the various items listed on the attached spreadsheet, including the cabinetry work, reflected only the arbitration panel's interim determination of cost on the basis of the evidence available to date. The arbitration panel stated that the award should not be viewed as final with respect to any "costs to complete." In other words, the costs listed on the spreadsheet for items not yet completed were not final costs but, instead, were the panel's best estimate at that time based on the terms of the original contract and the defendant's initial proposal. The award was final only "as to each credit and/or cost accounted for," meaning the credit listed on the spreadsheet as representing the amount the plaintiffs had paid to date for particular items. On the basis of this language, it is reasonable to conclude that the costs listed on the spreadsheet were not intended to reflect a final and binding determination. In their submission, the parties broadly authorized the arbitration panel to determine the amount the plaintiffs would pay for the work done by the defendant and its subcontractors, and to resolve any disputes that might arise, which would include issues regarding costs and payments.

Accordingly, under any reasonable construction of the February 4, 2017 award, the parties were on notice that the amounts listed on the spreadsheet, other than those reflecting the plaintiffs' paid to date amounts, could be subject to revision or modification by the parties in consultation with the supervising arbitrators based on the actual work performed. The parties could have sought to modify or correct the award if they felt that it failed accurately to reflect the intent of the parties or improperly left issues open for further consideration. Instead, by failing to do so, they chose to be bound by the award as it was rendered. We conclude that the court correctly denied the defendant's request for an order holding the plaintiffs responsible for the cost of cabinetry work as set forth in the February 4, 2017

award, rather than pursuant to the updated determination as set forth in the unchallenged August 23, 2017 award.

The judgment is affirmed as to the trial court's denial of the defendant's request for an order directing the plaintiffs to pay the defendant an additional amount for cabinetry work, the judgment is reversed as to the trial court's denial of the defendant's application to confirm the February 4, 2017 arbitration award, and the case is remanded with direction to grant the application to confirm that award but to deny any additional relief requested therein.

In this opinion the other judges concurred.

[1] Edward Zimmerman and Laurel H. Zimmerman own and operate Bradford Estates, LLC. They were named as additional defendants in the underlying action, but the appeal was filed only on behalf of Bradford Estates, LLC, and the Zimmermans have not personally participated in the appeal. Accordingly, we refer to Bradford Estates, LLC, as the defendant throughout this opinion.

[2] The defendant amended the appeal to challenge the court's denial of a motion for reconsideration. Because we conclude that the trial court should have granted the application to confirm, we do not address whether it abused its discretion in denying the motion for reconsideration.

[3] In its principal appellate brief, the defendant asks this court for the following relief on appeal: to "reverse the decision of the trial court and direct that judgment enter confirming the February Arbitration Award's award of $51,856.65 for 'Cabinetry—labor and materials,' and order the plaintiffs' counsel to pay $21,463 to the defendant."

[4] The factual record before us includes the pleadings filed with the trial court and the transcript of the hearing on the defendant's application to confirm the arbitration award. No evidence was offered at that hearing. The defendant attached to its application redacted copies of the parties' stipulation and the February 4, 2017 arbitration award, and the plaintiffs attached unredacted copies of the same to their responsive pleading. The plaintiffs also attached copies of Schedule A, which is referenced in the stipulation, and the arbitration panel's August 23, 2017 award. Although the defendant moved to strike the unredacted versions of the stipulation and awards from the record for violating the confidentiality provisions of the parties' arbitration agreement, there is no indication in the record that the trial court acted on the motion to strike. In any event, the defendant does not argue on appeal that the unredacted stipulation and awards are not part of the record or that this court should not rely on them in resolving this appeal.

[5] The arbitration panel made the following findings in its February 4, 2017 award regarding the root cause of the breakdown in the parties' relationship. "The arrangement that the [plaintiffs] say they relied on, that is a contract subject to modification during the construction, requires construction experience, agreement, trust, mutual interest, and great communication to be successful. These requirements were lacking between the parties. Even worse, the parties had no procedure for documenting any changes they made. From the outset, Ed Zimmermann's poor communication skills, coupled with the [plaintiffs'] inexperience, were a recipe for disaster. The parties had many misunderstandings, which gave rise to increasing anger and suspicion on all sides."

[6] The stipulation provided in relevant part: "2. The parties agree to appoint an arbitrator and two neutral supervisors . . . to adjudicate the building and structural issues submitted to them, and to supervise, monitor, manage and instruct (where applicable) [the defendant] and its subcontractors in their work as described herein.

* * *

"8. The [a]rbitrators shall have the authority to decide how [the] [p]laintiffs' [p]roject will be completed. In furtherance of that authority, the [a]rbitrators shall have the following duties: (1) determine what documents are controlling with regard to the parties' agreement and/or the [p]roject; (2) determine if the parties amended or changed the agreement and if so what were those changes; (3) determine whether such amendments are legally binding upon

the parties; (4) determine, if the parties agreed to any changes, how those affect the price; (5) determine who should be responsible for any increase/ decrease in cost for materials attributable to changes in market prices since 2013; (6) determine the standard to which the work is to be performed at the [plaintiffs'] home by [the defendant]; (7) resolve issues of credibility between the parties; (8) determine the price to be paid by the [plaintiffs] to [the defendant] for the completion of the [p]roject as decided under (1), (2), and (3) above; (9) resolve questions to be set forth in a Schedule A; (10) resolve any other issues that may arise concerning this stipulation; [and] (11) take any other action as may be deemed necessary to effectuate the intent of this stipulation.

"9. The [e]ngineering and [b]uilding [s]upervisors shall oversee [the defendant's] work and oversee the implementation of the [a]rbitrators' decisions as described herein and be responsible for answering any questions and resolving any problems that arise during the course of the [p]roject. . . ."

[7] The term "evergreen" is not defined in the stipulation but appears to reflect the parties' intent that, as payments were made periodically to the defendant or its contractors from the escrow account, the plaintiffs would replenish the account with additional funds necessary to keep the balance of the escrow account at $100,000.

[8] The award indicates that the spreadsheet is "entitled 16 Plymouth Rd.— Costs to Complete." Although the spreadsheet at the end of the award does not bear this designation, the parties have not raised that as an issue or provided us with any indication that the arbitrators were referring to a different spreadsheet other than the one provided.

[9] Although there appear to some be minor errors in the mathematical calculations on the spreadsheet, including with respect to the cabinetry work at issue on appeal, these technical defects were not raised by the parties.

[10] The plaintiffs filed a motion with the arbitration panel asking for reargument and reconsideration. The defendant filed an opposition in which it raised its own concerns with the award. The panel denied the motion on February 27, 2017. We need not decide whether the filing of such a motion acted to extend the thirty day statutory period set forth in General Statutes § 52-420 for filing an application to vacate, modify or correct an award because, even if it did, no such application was filed within thirty days following the denial of the motion by the arbitration panel.

[11] The item 21 cabinetry work referred to cabinets and vanities for the kitchen, bathrooms, and mudroom. Another one of the items listed on Schedule A concerned "Sun Room Cabinetry," an item that was resolved by the parties and is distinct from the cabinetry at issue in this appeal.

[12] Specifically, the defendant asked the court to issue the following order: "That any and all subsequent orders issued by one or more of the arbitrators [that] conflicts with or purports to reduce that portion of the February 4, 2017 award which awarded [the defendant] $76,500 (total) for 'Cabinetry— labor/material" is hereby declared illegal, null, and void pursuant to [General Statutes] § 52-416 et seq." (Emphasis omitted.) Additionally, the defendant sought an order from the court requiring the plaintiffs' counsel to release from escrow $21,463 to the defendant.

[13] On March 23, 2018, the defendant filed a motion for reconsideration and to reargue. The court denied the motion without comment the same day. The defendant amended the present appeal to include a challenge to the court's denial of the motion for reconsideration. See footnote 2 of this opinion.

[14] We recognize, of course, that if an award is not timely rendered in accordance with the provisions of General Statutes § 52-416, the award has no legal effect.

[15] General Statutes § 52-417 provides: "At any time within one year after an award has been rendered and the parties to the arbitration notified thereof, any party to the arbitration may make application to the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when the court is not in session, to any judge thereof, for an order confirming the award. The court or judge shall grant such an order confirming the award unless the award is vacated, modified or corrected as prescribed in sections 52-418 and 52-419."

[16] General Statutes § 52-418 (a) provides in relevant part: "Upon the application of any party to an arbitration, the superior court . . . shall make an order vacating the award if it finds any of the following defects: (1) If the award has been procured by corruption, fraud or undue means; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3)

if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced; or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."

[17] General Statutes § 52-419 (a) provides in relevant part: "Upon the application of any party to an arbitration, the superior court . . . shall make an order modifying or correcting the award if it finds any of the following defects: (1) If there has been an evident material miscalculation of figures or an evident material mistake in the description of any person, thing or property referred to in the award; (2) if the arbitrators have awarded upon a matter not submitted to them unless it is a matter not affecting the merits of the decision upon the matters submitted; or (3) if the award is imperfect in matter of form not affecting the merits of the controversy."

[18] General Statutes § 52-420 (b) provides: "No motion to vacate, modify or correct an award may be made after thirty days from the notice of the award to the party to the arbitration who makes the motion."

[19] Although courts have discretion to treat an opposition to a motion to confirm an arbitration award as a motion to vacate the award; see *Wu* v. *Chang*, 264 Conn. 307, 309–10, 823 A.2d 1197 (2003); it may do so only if the opposition is filed within the thirty day period prescribed in § 52-420 (b). Id., 312. "To conclude otherwise would be contrary not only to the clear intent of the legislature as expressed in §§ 52-417, 52-418 and 52-420 (b), but also to a primary goal of arbitration, namely, the efficient, economical and expeditious resolution of private disputes." Id., 313.

————————————————————